UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SVETLANA TYSHKEVICH,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., etc.; et al.,<br><br>Defendants. | No. 2:15-cv-2010 JAM AC (PS)<br><br>ORDER & FINDINGS AND RECOMMENDATIONS |

This is a mortgage foreclosure case. Plaintiff has filed an application for a Temporary Restraining Order ("TRO") or a preliminary injunction against Wells Fargo Bank, N.A., as Trustee, on Behalf of the Holders of the Harborview Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2006-12 ("Wells Fargo"), seeking to enjoin a trustee's sale of her home scheduled for November 23, 2015. The application seeks relief only against Wells Fargo.

Plaintiff has completed the TRO Checklist required by E.D. Cal. R. 231(c), indicating that the application was served on the affected parties. See ECF No. 16-1. A hearing on the application was held on November 13, 2015 before the undersigned, at which all parties to this action were represented either in person or by telephone.

////

////

////

1

I. BACKGROUND

A.     Allegations of the Complaint

In her First Amended Complaint ("Complaint") (ECF No. 17), plaintiff alleges that she "rescinded" her Wells Fargo ("Harbor View Trust") mortgage loan on March 14, 2015. Complaint ¶ 10. Plaintiff does not allege the date the loans was made, but she does allege that she "is able to rescind after three years from the date of the loan transactions because there has never been consummation of the loans." Complaint ¶ 17 n.2. (As discussed more fully below, under certain circumstances, a loan secured by the borrower's dwelling can be rescinded up to three years after the loan is made.) By way of explanation, plaintiff alleges:

> There was never consummation with the named parties within the transaction. A binding contract requires identifiable parties. Here, the pertinent loan documents failed to identify the true parties to the transactions.

Id.

B.     The Claims

The Complaint's first three Causes of Action allege that all the defendants violated the Fair Debt Collection Practices Act ("FDCPA") by: (1) taking collection activity against her that "cannot legally be taken" (in violation of 15 U.S.C. § 1692e(5)), since she had already rescinded the loan; (2) falsely representing the legal status of the debt (in violation of 15 U.S.C. § 1692e(2)(A)); and (3) threatening "to collect an amount not authorized by law" (in violation of 15 U.S.C. § 1692f(a)).

The Complaint's Fourth Cause of Action alleges that all the defendants violated the California Business & Professions Code § 17200 by violating the FDCPA.

The Complaint's Fifth Cause of Action alleges that defendants Wells Fargo Bank, N.A. and the Bank of New York, violated the Trust in Lending Act ("TILA"), 15 U.S.C. § 1635(b), by failing to comply with their obligations once a loan has been rescinded.[1]

---

[1] At the hearing on this matter, plaintiff asserted that the loan was a refinance, and not a mortgage loan for the purchase of the property. Defendants did not contest the assertion. Such transactions are subject to TILA's "buyer's remorse" rescission provisions. Semar v. Platte . . . [continued]

II.  MOTION FOR TRO OR PRELIMINARY INJUNCTION

Plaintiff seeks a TRO or preliminary injunction against defendant Wells Fargo Bank, N.A. The basis for plaintiff's application is defendant's alleged unlawful conduct in initiating and maintaining illegal foreclosure proceedings and threatening to sell plaintiff's home at a trustee's sale.  The unlawfulness arises from plaintiff's alleged prior rescission of the mortgage on which these collection actions are based.[2]

Defendant argues that the motion should be denied because (1) the basis of her claim is that she timely rescinded the mortgage loan, but in fact, her time for rescission has long since expired and (2) the balance of equities are not in her favor, because she has not made loan payments in many years and cannot expect to keep her house.

A.  Standards

In order for the court to grant a TRO or a preliminary injunction, plaintiff must demonstrate that: (1) she is likely to succeed on the merits of her claim; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; and (4) that an injunction is in the public interest." Lopez v. Brewer, 680 F.3d 1068, 1072 (9th Cir. 2012) (preliminary injunction) (quoting Winter v. NRDC, 555 U.S. 7, 20 (2008)); Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (Ninth Circuit's analyses of the district court's grant of a TRO and of a preliminary injunction are "substantially identical").

There is a "serious questions" variation of this standard, under which, rather than requiring a "likelihood" of success on the merits, the court examines whether there are "serious questions" going to the merits:

---

Valley Fed. Sav. & Loan Ass'n, 791 F.2d 699, 701-02 (9th Cir. 1986) ("TILA's 'buyer's remorse' provision allows borrowers three business days to rescind [extendable to 3 years if lender fails to make required disclosures], without penalty, a consumer loan that uses their principal dwelling as security").

[2] In her application, plaintiff alleges that this conduct violates "California's Rosenthal Fair Debt Collection Practices Act."  The Complaint mentions the state law in the jurisdictional and definition sections, but does not allege any violations of it.

> Under the "serious questions" variation of the test, a preliminary injunction is proper if there are serious questions going to the merits; there is a likelihood of irreparable injury to the plaintiff; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest. The elements of the preliminary injunction test must be balanced, so that a stronger showing of one element may offset a weaker showing of another. "'[S]erious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."

Lopez, 680 F.3d at 1072 (citations omitted) (quoting Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 & 1135 (9th Cir. 2011)).

### B. Statute of Limitations / Statute of Repose

> TILA's "buyer's remorse" provision allows borrowers three business days to rescind, without penalty, a consumer loan that uses their principal dwelling as security. TILA and its regulations, issued by the Federal Reserve System ("Reg Z"), require the lender to provide a form stating the specific date on which the three-day rescission period expires. If the lending institution omits the expiration date and fails to cure the omission by subsequently providing the information, the borrower may rescind the loan within *three years* after it was consummated.

Semar v. Platte Valley Fed. Sav. & Loan Ass'n, 791 F.2d 699, 701-02 (9th Cir. 1986) (emphasis added) (citations omitted); Beach v. Ocwen Fed. Bank, 523 U.S. 410, 411 (1998) (same); 12 C.F.R. § 226.23(a)(3) ("[i]f the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation").

### C. Request for Judicial Notice

Defendant filed a Request for Judicial Notice ("RfJN") (ECF No. 6), in conjunction with its motion to dismiss the original complaint.

#### 1. The exhibits

Exhibit A of the RfJN is a Deed of Trust recorded by the Placer County Recorder on March 14, 2006. ECF No. 6 at 5-27. It identifies plaintiff as the borrower (and trustor under the Deed of Trust), of $1.36 million from America's Wholesale Lender, the lender. The document secures the promissory note under which the mortgage loan was made. It states that under the promissory note, "Borrower owes Lender" the $1.36 million, plus interest. The document

4

1 identifies the Mortgage Electronic Registration System, Inc. ("MERS") as the nominee for the
2 lender, and the beneficiary under the Deed of Trust.
3       Exhibit B is a Notice of Default recorded by the Placer County Recorder on June 16,
4 2008, advising plaintiff that her property is in foreclosure. ECF No. 6 at 29-30. It identifies
5 MERS (c/o Countrywide Home Loans, Inc.), as the Beneficiary.
6       Exhibit C is a Notice of Rescission of the default, recorded December 5, 2012. ECF No. 6
7 at 32.
8       Exhibit D is a Notice of Default and Election To Sell, recorded October 22, 2014. ECF
9 No. 6 at 34-37. Not a model of clarity, it identifies National Default Servicing Corporation, the
10 entity that recorded the Notice, as "either the original Trustee, the duly appointed substituted
11 Trustee or acting as agent for the Trustee or Beneficiary" under the Deed of Trust, and also as
12 "Trustee for Select Portfolio Servicing, Inc., as servicing agent for Wells Fargo Bank, N.A., as
13 trustee, on behalf of the holders of the HarborView Mortgage Loan Trust Mortgage Loan Pass-
14 Through Certificates, Series 2006-12."
15       Exhibit E is a Notice of Trustee's Sale, recorded by National Default on March 12, 2015,
16 with a sale date of April 6, 2015. ECF No. 6 at 39-40.
17       Exhibit F is an unpublished California Court of Appeal decision, Tyshkevich v.
18 Countrywide Home Loans, Inc., C070764 (3rd Dist. December 26, 2014). ECF No. 6 at 42-61.
19         2. <u>Granting the request for judicial notice</u>
20       "A judicially noticed fact must be one not subject to reasonable dispute in that it is either
21 (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate
22 and ready determination by resort to sources whose accuracy cannot reasonably be questioned."
23 Fed. R. Evid. 201(b). "A court shall take judicial notice if requested by a party and supplied with
24 the necessary information." Fed. R. Evid. 201(d).
25       Exhibits A-E are recorded in the County Recorder's office, and Exhibit F is a judicial
26 record. All are properly subject to judicial notice. See Moreland v. U.S. Bank, N.A., 2015 WL
27 1932644 at *3, 2015 U.S. Dist. LEXIS 49764 at *8-9 (E.D. Cal. 2015) (Mendez, J.) (granting
28 judicial notice to documents recorded in a county recorder's office); Valerio v. Boise Cascade

Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978) (judicial notice of judicial records), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981).

Although plaintiff has now amended her complaint as of right, mooting the dismissal motion, the RfJN is still on the court's docket. Moreover, defendant refers to it in connection with its opposition to this motion, and the documents included therein are relevant to the current application. Accordingly, the court will grant defendant's Request for Judicial Notice.

D. <u>Analysis</u>

1. <u>Likelihood of success on the merits / serious question of law</u>

a. <u>FDCPA: "debt collector" and debt collection activity</u>

> Congress passed the FDCPA in 1977 with the stated purposes of eliminating "abusive debt collection practices," ensuring "that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged," and promoting "consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). In furtherance of these purposes, the FDCPA bans a variety of debt collection practices and allows individuals to sue offending *debt collectors*.

Schlegel v. Wells Fargo Bank, NA, 720 F.3d 1204, 1207-08 (9th Cir. 2013) (emphasis added).

As in Schlegel, plaintiff here has alleged that defendant violated 15 U.S.C. §§ 1692e and 1692f, which prohibit "debt collectors" from making false and misleading representations in collecting debt (§ 1692e), and from using unfair debt collection practices (§ 1692f). Because these prohibitions apply only to "debt collector[s]" as defined by the FDCPA, the complaint must plead "factual content that allows the court to draw the reasonable inference" that Wells Fargo is a debt collector. Schlegel, 720 F.3d at 1208.

Plaintiff's Complaint contains no *factual* allegations from which the court can conclude that Wells Fargo is a debt collector, or at least is acting as one in this case. The Complaint only alleges, as a *legal conclusion*, that defendant "is a 'debt collector' as that term is defined by 15 U.S.C. § 1692A(6) and/or the Rosenthal Fair Debt Collection Practices Act ('RFDCPA')." Complaint ¶ 2. The only conduct plaintiff alleges, either in the complaint or in plaintiff's declaration for a preliminary injunction, is that defendant "threatened to conduct an illegal trustee's sale against my property," and that unless restrained, defendant "could unlawfully

6


1  proceed with the sale which could result in an aggressive eviction proceeding." See Plaintiff's
2  Declaration, ECF No. 16 ¶¶ 6, 9.

3  That is not sufficient to allege that defendant is a debt collector. A "debt collector" under
4  the FDCPA is an entity whose "principal purpose" is debt collection. 15 U.S.C. § 1692a(6);
5  Schlegel, 720 F.3d at 1208. As in Schlegel, "the complaint's factual matter, viewed in the light
6  most favorable to . . . [plaintiff], establishes only that debt collection is some part of Wells
7  Fargo's business, which is insufficient to state a claim under the FDCPA." Id. at 1209.

8  The other definition of "debt collector" under the statute is an entity that "regularly
9  collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or
10 due *another*." § 1692a(6) (emphasis added); Schlegel, 720 F.3d at 1208. The key here is that a
11 debt collector must regularly collect or try to collect the debts *of another*, and therefore excludes
12 entities even if they regularly collect debts owed to themselves. Schlegel, 720 F.3d at 1209-10
13 (rejecting argument that "language in the complaint adequately alleges that Wells Fargo collects
14 debts 'owed or due another,'" where the complaint alleged that Wells Fargo regularly acquires
15 mortgages that are in default).

16 In addition, conducting a non-judicial foreclosure is not the "collection of any debt"
17 subject to the FDCPA (or the Rosenthal Fair Debt Collection Practices Act, "RFDCPA"). See,
18 e.g., Shapiro v. Bank of Am., N.A., 2012 WL 670960 at *4, 2012 U.S. Dist. LEXIS 26414 at *9
19 (E.D. Cal. 2012) (Mendez, J.); Flores v. EMC Mortgage Co., 997 F. Supp. 2d 1088, 1116 (E.D.
20 Cal. 2014) (O'Neill, J.) ("'the activity of foreclosing on the property pursuant to a deed of trust is
21 not the collection of a debt within the meaning of the FDCPA'"); Jensen v. Quality Loan Serv.
22 Corp., 702 F. Supp. 2d 1183, 1200 (E.D. Cal. 2010) (Wanger, J.) ("[t]he 'law is clear that
23 foreclosing on a deed of trust does not invoke the statutory protections of the RFDCPA'");
24 Castaneda v. Saxon Mortgage Servs., Inc., 687 F. Supp. 2d 1191, 1197 (E.D. Cal. 2009) (Shubb,
25 J.) ("foreclosure pursuant to a deed of trust does not constitute debt collection under the
26 RFDCPA").
27 ////
28 ////

In summary, plaintiff has no likelihood of success on her FDCPA claims.[3] The only party named in the application is Wells Fargo, which, according to the facts alleged in the complaint, is not a "debt collector," and has not engaged in any debt collection activities.[4]

b. <u>TILA: the statute of repose</u>

Pursuant to a statute of repose within TILA, plaintiff's right to rescind the loan expires, at most, "three years after the loan closes." <u>Beach</u>, 523 U.S. at 411; <u>McOmie-Gray v. Bank of Am. Home Loans</u>, 667 F.3d 1325, 1326 (9th Cir. 2012) ("15 U.S.C. § 1635(f) is a three-year statute of repose, requiring dismissal of a claim for rescission brought more than three years after the consummation of the loan secured by the first trust deed").

Plaintiff does not allege the date her loan closed, although she strongly hints that she brought suit more than three years after the date of the loan. Normally, plaintiff need not allege that her lawsuit is timely, since the statute of limitations is an affirmative defense. However, Section 1635(f) is not technically a statute of limitations, rather it is a statute of repose. As such, "section 1635(f) completely extinguishes the right of rescission at the end of the 3 year period." <u>Beach</u>, 523 U.S. at 412. As a result, the expiration of the 3-year period "depriv[es] the courts of subject matter jurisdiction when a § 1635 claim is brought outside the three-year limitation period." <u>Miguel v. Country Funding Corp.</u>, 309 F.3d 1161, 1164 (9th Cir. 2002) (as amended December 23, 2002).

Defendant's RfJN includes a Deed of Trust, signed by plaintiff on or about March 7, 2006, showing that it was recorded on March 14, 2006, to secure a March 6, 2006 $1.36 million mortgage loan to plaintiff. ECF No. 6 at 5-27. Plaintiff says the loan was not consummated on that date because "the pertinent loan documents failed to identify the true parties to the transactions." Complaint ¶ 17 n.2.

---

[3] Even if the court reads the complaint to allege a claim under the California Rosenthal FDCPA statute, it still fails to state a claim because foreclosing on a deed of trust is not actionable debt collection activity, under the cases just listed. Moreover, if plaintiff cannot win under the federal statute, the court need not consider the state claims under supplemental jurisdiction.

[4] Nor does the complaint allege any debt collection activities against any of the other defendants, as the only activity it alleges are foreclosure activities.

1    Plaintiff relies on Jackson v. Grant, 890 F.2d 118, 122 (9th Cir. 1989) as supportive of her
2 assertion that the "true" lender was not identified. Jackson does not help plaintiff here. In
3 Jackson, plaintiff was faced with a foreclosure on her home. Union Home Loans stepped in to do
4 "takeout financing to avoid the pending foreclosure." Jackson, 890 F.2d at 119. Union did not
5 have a lender at the time, so it did not guarantee a loan. (Apparently, its business model was to
6 find a lender if it could, and if it could not, then it would consider financing the loan itself.)
7    Even though no lender existed at that time, Union sent plaintiff the mortgage loan
8 documents, including a notice of her right to rescind, on February 18, 1983:

> The Mortgage Loan Disclosure Statement and the Statement of Loan Terms informed Jackson that Union will not be the lender, that the lender is presently not known and that Jackson was not guaranteed a loan. The name of the lender was left blank on the Promissory Note and Deed of Trust.

12 Id. Union was unable to find a lender, and so in April 1983, it notified plaintiff that it (Union)
13 was the lender, but failed to send her a new notice of her right to rescind. Three years later, on
14 February 6, 1986 plaintiff notified the assignee of the loan that she was rescinding because the
15 lender failed to send her proper TILA documents when it funded the mortgage in April 1983.
16 Plaintiff successfully argued that the loan was not "consummated" until April 1983 – when Union
17 actually funded the loan and identified itself as the lender – and therefore her rescission letter was
18 timely.
19    In this case, the lender is identified as America's Wholesale Lender. Although the loan
20 was later assigned to Wells Fargo, that does nothing to change the facts that plaintiff was
21 informed who the lender was at the time the loan was made.[5]
22    There are two additional problems with plaintiff's argument. First, since the statute of
23 repose is jurisdictional, it is plaintiff's obligation to allege facts showing that she filed within

---

[5] Plaintiff also relies on Jesinoski v. Countrywide Home Loans, Inc., 135 S. Ct. 790 (2015), as supportive of her assertion that the loan was not consummated. The case does not help her. The question in Jesinoski was whether a *letter* notifying the lender of rescission was good enough to meet the 3-year period for rescission, or whether a lawsuit had to be filed within that time. The Court answered that a letter was good enough. Plaintiff did not send her letter within the 3-year period, so the case does not apply to her, and in any event, the case does not address when a loan is "consummated."

three years of the loan's consummation. She does not do so, and never gives any hint of when the loan was consummated or closed, so that the court could determine whether it has jurisdiction.

Instead, plaintiff seems to be arguing that the loan was *never* consummated because the lender was never identified. That leads to the second problem, which is that the Deed of Trust does identify the parties to the transaction, and specifically, it identifies the lender, namely "America's Wholesale Lender." It is true that defendant Wells Fargo does not appear on the Deed of Trust. But that does not undo the fact that the original lender, America's Wholesale Lender, was identified to plaintiff on the Deed of Trust in March 2006.[6]

In short, plaintiff has no likelihood of success on her TILA claim. By failing to file this lawsuit within three years of March 2006, she has allowed her TILA rescission rights to be extinguished.

### 2. The equities

At the hearing on this matter, plaintiff asserted that she paid her mortgage for 18 months, and stopped paying in November 2008 when the payments tripled and she sought loan modification. Thus, plaintiff has been living in her home for seven years without paying the loan secured by her home. Normally, the equities would not favor a person who lives for years in her

---

[6] The Court of Appeal decision indicates that in her state lawsuit, plaintiff herself alleged that the loan was at some point sold to Wells Fargo. See ECF No. 6 at 49. Plaintiff does not explain, in the complaint or her application, why the fact that the loan is not still owned by the original lender means that the loan was never consummated.

At the hearing on this matter, plaintiff cited Bank of America, N.A. etc. v. Nash, No. 59-2011-CA-004389 (Fla. Cir. Ct. October 16, 2014), as evidence that America's Wholesale Lender is not a New York corporation as asserted on the Deed of Trust, and that it does not in fact exist. Setting aside whether such a finding by a Florida State court would have any effect on this case, the Florida case does not support plaintiff's assertion in any event. In that case, in which America's Wholesale Lender "did not appear at trial," the court concluded, based upon the testimony of a witness for Bank of America, that America's Wholesale Lender "was not in fact incorporated in the year 2005." This is not a finding that the company was not a corporation in March 14, 2006, when the Deed of Trust was recorded, nor is it a finding that it was not incorporated on some date prior to, or after 2005. The court also found that it was not incorporated afterward "by either Countrywide Home Loans, or Bank of America, or any of their related corporate entities or agents." This is not a finding that it was not incorporated after 2005, only that it was not incorporated after 2005 by any of the named entities.

10

mortgaged home without paying the mortgage.  However, it does appear that plaintiff tried to get the matter resolved during that time, by filing a lawsuit in state court and, she asserts, unsuccessfully attempting to add the current defendants to that lawsuit.  The equities arguably do not favor either party here.

### 3.  Irreparable harm

Plaintiff alleges that the loss of her home would constitute irreparable harm since "my home is unique and very special to me and my family."  ECF No. 16 ¶ 10.  She may be correct that the loss of a home is an irreparable injury.  See Wrobel v. S.L. Pope & Associates, 2007 WL 2345036 at *1 (S.D. Cal. 2007) (for purposes of a TRO application, "[l]osing one's home through foreclosure is an irreparable injury," but ordering briefing on the subject before deciding on a preliminary injunction).

However, plaintiff is seeking to prevent the foreclosure because, she says, she properly *rescinded* the mortgage loan under the TILA.  But rescission puts her out of her home too, because the point of TILA rescission is to return the parties to where they were before the transaction.  See 15 U.S.C. § 1635(b) ("[u]pon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value"); Quenzer v. Advanta Mortgage Corp. USA, 288 B.R. 884, 888 (D. Kan. 2003) ("within the meaning of [TILA], 'rescission' does not mean an annulment that is definitively accomplished by unilateral pronouncement, but rather a remedy that restores the status quo ante") (quoted with approval by Yamamoto v. Bank of New York, 329 F.3d 1167, 1172 (9th Cir. 2003), cert. denied, 540 U.S. 1149 (2004)).

Thus, plaintiff's real harm is that if she fails to rescind properly, she may not be entitled to get back whatever "finance or other charge" she paid, whereas she may be entitled to it with a proper rescission.  See 15 U.S.C.A. § 1635(b) ("[w]hen an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge").  This harm is measured in damages, it is not irreparable harm.

////

### 4. Public interest

Assuming that "there is a strong public interest in preventing unlawful foreclosures," Johnson v. Bank of Am., N.A., 2015 WL 4198724 at *6, 2015 U.S. Dist. LEXIS 90765 at *17 (N.D. Cal. 2015), plaintiff has failed to show that there is anything unlawful about this foreclosure. It is not clear that there is a public interest in preventing an entirely lawful foreclosure involving a private $1.36 million refinance of a mortgage that has not been paid in seven years.

### III.  CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that defendant's Request for Judicial Notice (ECF No. 14) is GRANTED; and

IT IS HEREBY RECOMMENDED that plaintiff's application for a Temporary Restraining Order or Preliminary Injunction (ECF No. 16), be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Because of the time-sensitivity of this matter, any party may file written Objections with the court and serve a copy on all parties no later than Wednesday, November 18, 2015 at 4:00 p.m. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." No parties shall file responses to the Objections unless ordered to do so by the district judge. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: November 13, 2015

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE