1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

13

14

15

16

SVETLANA TYSHKEVICH,

Plaintiff,

v.

WELLS FARGO BANK, N.A., etc.; et al.,

Defendants.

No.  2:15-cv-2010 JAM AC (PS)

ORDER & FINDINGS AND
RECOMMENDATIONS

17     This is a mortgage foreclosure case.  The First Amended Complaint ("Complaint") alleges

18 violations of (1) the Trust in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f, (2) the Fair Debt

19 Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, and (3) California's Unfair

20 Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.[1]  Plaintiff sues Wells Fargo Bank,

21 N.A. ("Wells Fargo" or "Harbor View Trust"),[2] Select Portfolio Servicing, Inc. ("SPS"), National

22 Default Servicing Corporation ("NDSC"), Bank of New York Mellon ("BoNY"),[3] and Real Time

---

[1]  The Complaint also alleges that the lawsuit "arises out of Defendants' violations" of
California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code
§§ 1788-1788.33, although there is no separate claim alleging specific violations of that statute.
[2]  "Wells Fargo Bank, N.A., as Trustee on Behalf of Harbor View Mortgage Loan Pass-Through
Trust Certificates, Series 2006-12." See First Amended Complaint ("Complaint") (ECF No. 17)
¶ 2.
[3]  "The Bank of New York Mellon fka The Bank of New York, As Successor to JP Morgan Chase
Bank, N.A. as Trustee for the Certificateholders of CWHEQ Revolving Home Equity Loan Trust,
Series 2006-C."

1

1    Resolutions, Inc. ("Real Time").  This proceeding was referred to the undersigned by E.D. Cal. R.

2    ("Local Rule") 302(c)(21).

3        Defendants move to dismiss this action on several grounds.  Their principal argument,

4    however, is that the entire lawsuit is dependent upon plaintiff's alleged rescission of her loans, but

5    that the rescission was made nine (9) years after the loans were made, long past the three (3) year

6    period for rescission permitted by 15 U.S.C. § 1635(f).  For the reasons set forth below, the

7    undersigned will recommend that the motions be granted, and that the Complaint be dismissed

8    with leave to amend.

9                            I.  BACKGROUND

10        A.    Allegations of the Complaint

11        In her First Amended Complaint ("Complaint") (ECF No. 17), plaintiff alleges that she

12    "rescinded" her Wells Fargo ("Harbor View Trust") loan on March 14, 2015, and that she

13    "rescinded her second trust deed loan" with Bank of New York ("BoNY") on July 2, 2015.

14    Complaint ¶¶ 10 & 11.  Plaintiff does not allege the date the loans were made, nor attach any

15    documentation of the loan from which the court could determine the date.  However, implicitly

16    acknowledging that the rescission must occur within 3 years after the date the loan was made, see

17    15 U.S.C. § 1635(f), plaintiff does allege that she "is able to rescind after three years from the

18    date of the loan transactions because there has never been consummation of the loans."

19    Complaint ¶ 17 n.2.  By way of explanation, plaintiff alleges:

20            There was never consummation with the named parties within the
             transaction.  A binding contract requires identifiable parties.  Here,
21           the pertinent loan documents failed to identify the true parties to the
             transactions.
22

23    Id.

24        B.    The Claims

25        The Complaint's first three Causes of Action allege that all the defendants violated the

26    FDCPA by: (1) taking collection activity against her that "cannot legally be taken" (violating 15

27    U.S.C. § 1692e(5); (2) falsely represented the legal status of the debt (violating 15 U.S.C.

28    § 1692e(2)(A)); and (3) threatened "to collect an amount not authorized by law" (violating 15

U.S.C. § 1692f(1)).  Each of these claims is predicated upon plaintiff's implicit allegation (reading the Complaint in the light most favorable to her) that she had properly rescinded the loans under TILA, before defendants took these actions.

The Complaint's Fourth Cause of Action alleges that all the defendants violated the California Business & Professions Code § 17200 by violating the FDCPA.

The Complaint's Fifth Cause of Action alleges that defendants Wells Fargo and BoNY violated TILA by failing to comply with their obligations once her loans had been rescinded.

## II.  MOTIONS TO DISMISS

Wells Fargo[4] and BoNY move to dismiss the TILA claim, arguing that (1) it is untimely under 15 U.S.C. § 1635(f), and (2) plaintiff failed to "tender the amounts due under the loan." ECF Nos. 29 at 6-8 (Wells Fargo), 33 at 7-9 (BoNY).

All defendants have moved to dismiss all the FDCPA claims, arguing that plaintiff's TILA right to rescind her mortgage loans – upon which all of her FDCPA claims are based – expired years ago under TILA's three-year statute of repose, as set forth at 15 U.S.C. § 1635(f). ECF Nos. 27-1 at 4-7 (Real Time), 29 at 6-7 (Wells Fargo), 33 at 7-8 (BoNY).  The defendants have also made the following arguments.

Real Time moves to dismiss (1) the FDCPA claims and the state claim, for failure to allege that it violated any provision of the FDCPA, (2) all claims against it, arguing that the Complaint does not comply with the "short and plain statement" requirement of Fed. R. Civ. P. 8, and (3) California's Unfair Competition Law claim, for lack of standing.  ECF No. 27-1 at 7-9.

BoNY moves to dismiss the FDCPA claims, arguing that it is not engaged in the collection of any debt.  ECF No. 33 at 9.  The undersigned interprets this to be an argument that BoNY is not a "debt collector" within the meaning of the FDCPA, 15 U.S.C. § 1692a(6).  Wells Fargo and BoNY also argue that the FDCPA statute only applies to the collection of debt, and that non-judicial foreclosures are not the collection of "debt," within the meaning of the FDCPA,

---

[4]  Wells Fargo, SPS and NDSC filed a joint brief, so references to motions or arguments made by "Wells Fargo" includes all three defendants unless otherwise specified.

15 U.S.C. § 1692a(5).  ECF Nos. 29 at 9 (Wells Fargo), 33 at 9-10 (BoNY).

    A. <u>Dismissal Standards</u>

    All defendants have moved to dismiss based upon Rule 12(b)(6) and/or Rule 8(a). However, since defendants' motions are predicated in part upon 15 U.S.C. § 1635(f), which is a jurisdictional statute of repose, the court must also consider the standards applicable to Rule 12(b)(1) motions to dismiss for lack of jurisdiction.[5]

    1. <u>Rule 12(b)(1) Standards</u>

> To invoke a federal court's subject-matter jurisdiction, a plaintiff needs to provide only "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). The plaintiff must allege facts, not mere legal conclusions, in compliance with the pleading standards established by <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). <u>See Harris v. Rand</u>, 682 F.3d 846, 850-51 (9th Cir. 2012).  Assuming compliance with those standards, the plaintiff's factual allegations will ordinarily be accepted as true unless challenged by the defendant. <u>See</u> 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1363, at 107 (3d ed.2004).

> Under Rule 12(b)(1), a . . . "facial" attack accepts the truth of the plaintiff's allegations but asserts that they "are insufficient on their face to invoke federal jurisdiction." <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004). The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction. <u>Pride v. Correa</u>, 719 F.3d 1130, 1133 (9th Cir. 2013).

<u>Leite v. Crane Co.</u>, 749 F.3d 1117, 1121 (9th Cir.), <u>cert. denied</u>, 135 S. Ct. 361 (2014).[6]

---

[5]  The three-year period imposed by 15 U.S.C. § 1635(f), upon which plaintiffs' motions rest, is not just a statute of limitations, it is a statute of repose. <u>McOmie-Gray v. Bank of Am. Home Loans</u>, 667 F.3d 1325, 1326 (9th Cir. 2012) ("15 U.S.C. § 1635(f) is a three-year statute of repose, requiring dismissal of a claim for rescission brought more than three years after the consummation of the loan secured by the first trust deed"). Therefore, once the three-year clock runs out, the right of rescission is completely extinguished, and deprives this court of jurisdiction to hear a claim based upon the alleged rescission. <u>Beach</u>, 523 U.S. at 412 ("§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period"); <u>Miguel v. Country Funding Corp.</u>, 309 F.3d 1161, 1164 (9th Cir. 2002) (the expiration of the 3-year period "depriv[es] the courts of subject matter jurisdiction when a § 1635 claim is brought outside the three-year limitation period").

[6]  A "factual" attack is subject to a different standard. <u>See Leite</u>, 749 F.3d at 1121.

1    In this case, defendants have mounted a "facial" attack, because they base the attack on

2   the face of the Complaint, together with matters that may be considered by the court through

3   judicial notice.  Specifically, defendants argue that the Deeds of Trust for plaintiff's loans, which

4   they assert are subject to judicial notice, show that plaintiff's lawsuit was filed more than three

5   years from the date the loans were made.  Defendants further argue that plaintiff's opposition to

6   their motion is based upon allegations of the Complaint that contradict matters subject to judicial

7   notice.  Accordingly, all of defendants' motions will be decided under Rule 12(b)(6) standards.

8                    2.  Rule 12(b)(6) Standards

9    The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

10   sufficiency of the Complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th

11   Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

12   sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901

13   F.2d 696, 699 (9th Cir. 1990).

14   In order to survive dismissal for failure to state a claim, a complaint must contain more

15   than a "formulaic recitation of the elements of a cause of action;" it must contain factual

16   allegations sufficient to "raise a right to relief above the speculative level."  Bell Atlantic Corp. v.

17   Twombly, 550 U.S. 544, 555 (2007).  It is insufficient for the pleading to contain a statement of

18   facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of

19   action.  Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35

20   (3d ed. 2004)).  Rather, the complaint "must contain sufficient factual matter, accepted as true, to

21   'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

22   (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads

23   factual content that allows the court to draw the reasonable inference that the defendant is liable

24   for the misconduct alleged."  Id.

25   In reviewing a complaint under this standard, the court "must accept as true all of the

26   factual allegations contained in the complaint," construe those allegations in the light most

27   favorable to the plaintiff, and resolve all doubts in the plaintiffs' favor.  See Erickson v. Pardus,

28   551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954,

1   960 (9th Cir. 2010), cert. denied, 131 S. Ct. 3055 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th

2   Cir. 2010).  However, the court need not accept as true, legal conclusions cast in the form of

3   factual allegations, or allegations that contradict matters properly subject to judicial notice.  See

4   Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State

5   Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).

6          Pro se pleadings are held to a less stringent standard than those drafted by lawyers.

7   Haines v. Kerner, 404 U.S. 519, 520 (1972).  Pro se complaints are construed liberally and may

8   only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support

9   of his claim which would entitle him to relief.  Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir.

10  2014).  A pro se litigant is entitled to notice of the deficiencies in the complaint and an

11  opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See

12  Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

13         B.  Requests for Judicial Notice

14         "A court shall take judicial notice if requested by a party and supplied with the necessary

15  information."  Fed. R. Evid. 201(d).  "A judicially noticed fact must be one not subject to

16  reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the

17  trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy

18  cannot reasonably be questioned."  Fed. R. Evid. 201(b).

19         Even where a document is not subject to judicial notice, however, the court may still

20  consider a document proffered for judicial notice, if it qualifies under the "incorporation by

21  reference" doctrine.

22                 [T]he "incorporation by reference" doctrine . . . permits us to take
                   into account documents "whose contents are alleged in a complaint
23                 and whose authenticity no party questions, but which are not
                   physically attached to the [plaintiff's] pleading."
24
25  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting Janas v. McCracken (In re

26  Silicon Graphics Inc. Sec. Litig.), 183 F.3d 970, 986 (9th Cir. 1999)).  The Ninth Circuit has

    extended the doctrine
27
                   to situations in which the plaintiff's claim depends on the contents
28                 of a document, the defendant attaches the document to its motion to

                                             6

dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint.

Knievel, 393 F.3d at 1076.

### 1. Defendant Real Time

a. <u>Exhibit A</u>:  Home equity "Credit Line Agreement" for $170,000, dated March 6, 2006, between borrower Svetlana Tyshkevich and lender America's Wholesale Lender ("AWL"), and bearing the signature of Ms. Tyshkevich (dated March 7, 2006).  ECF No. 27-4.

The Agreement does not purport to be an official document, nor to be recorded in any recorder's office or with any other governmental agency.  Real Time vaguely asserts that plaintiff refers in the Complaint to all documents for which it seeks judicial notice (or that they are contained in public records).  ECF No. 27-1 at 2 n.1.  However, the court can find no reference to this document in the Complaint, and Real Time does not specify where in the Complaint this reference is to be found.  The Complaint does refer to plaintiff's "mortgage loan with Harbor View Trust," and her "second trust deed loan with BONY," but Exhibit A does not on its face show that it is either of these loans.

The request for judicial notice of this document will therefore be denied.

b. <u>Exhibit B</u>:  Deed of Trust dated March 6, 2006, for $170,000 , between Svetlana Tyshkevich and America's Wholesale Lender (through its "nominee," the Mortgage Electronic Registration Systems, Inc. ("MERS")), recorded at the Placer County Recorder's Office on March 14, 2006 (Recorder's Office Document No. DOC-2006-0027653).  ECF No. 27-5.  The Deed of Trust states that it encumbers plaintiff's home as security for her "revolving credit agreement dated March 6, 2006," and states that "[t]he maximum principal obligation under the Agreement" secured by the Deed of Trust is $170,000.

The existence and contents of this publicly recorded document can accurately and readily be determined, and therefore the request for judicial notice of the document (hereinafter "Real Time RfJN Exh. B"), will be granted.

c. <u>Exhibit C</u>:  Correspondence from Real Time, addressed to Svetlana Tyshkevich, dated March 27, 2009.  ECF No. 27-6.  This document is not referred to in the

7

1   Complaint (notwithstanding Real Time's vague assertion that all documents for which it seeks

2   judicial notice are referred to in the Complaint), and it meets none of the requirements for taking

3   judicial notice.  The request for judicial notice of this document will be denied.

4           d. Exhibit D:  "Notice of TILA Rescission" from Svetlana Tyshkevich to

5   Real Time, dated July 2, 2015.  ECF No. 27-7.  The document makes reference to America's

6   Wholesale Lender as the "Lender," and to "Countrywide" as the "Originator."

7           This document may, or may not, be referred to in the Complaint.  In the Complaint,

8   plaintiff alleges that on July 2, 2015, she "rescinded her second trust deed loan with BONY."

9   Complaint ¶ 36.  However, Exhibit D contains no reference to any "loan with BONY."  Real

10  Time makes no effort to explain how the court would know that Exhibit D is the document

11  referred to in the Complaint, and therefore the request for judicial notice of this document will be

12  denied.

13          2. Wells Fargo

14          a. Exhibit A:  Deed of Trust dated March 6, 2006 for $1.36 million,

15  between Svetlana Tyshkevich and America's Wholesale Lender, recorded at the Placer County

16  Recorder's office on March 14, 2006 (Recorder's Office Document No. DOC-2006-0027652).

17  ECF No. 30 at 5-27.  The Deed of Trust encumbers plaintiff's home as security for "a promissory

18  note signed by Borrower and dated March 6, 2006," and which promissory note "states that

19  Borrower owes Lender" $1.36 million.

20          The existence and contents of this publicly recorded document can accurately and readily

21  be determined, and therefore the request for judicial notice of the document (hereinafter "Wells

22  Fargo RfJN Exh. A"), will be granted.

23          b. Exhibit B:  "Notice of Default" based upon the $1.36 million Deed of

24  Trust executed by Svetlana Tyshkevich, dated June 12, 2008, and recorded at the Placer County

25  Recorder's Office on June 16, 2008 (Recorder's Office Document No. DOC-2008-0048763-00).

26  ECF No. 30 at 29-30.  The existence and contents of this publicly recorded document can

27  accurately and readily be determined, and therefore the request for judicial notice of the document

28  (hereinafter "Wells Fargo RfJN Exh. B"), will be granted.

1    c. Exhibit C:  "Notice of Rescission" of Exhibit B, dated December 3,

2    2012, and recorded at the Placer County Recorder's Office on December 5, 2012 (Recorder's

3    Office Document No. DOC-2012-0116251-00).  ECF No. 30 at 32.  The existence and contents of

4    this publicly recorded document can accurately and readily be determined, and therefore the

5    request for judicial notice of the document (hereinafter "Wells Fargo RfJN Exh. C"), will be

6    granted.

7    d. Exhibit D:  "Notice of Default" based upon the $1.36 million Deed of

8    Trust executed by Svetlana Tyshkevich, dated October 20, 2014, and recorded at the Placer

9    County Recorder's office on October 22, 2014 (Recorder's Office Document No. DOC-2014-

10   0074663-00).  ECF No. 30 at 34-37.  The existence and contents of this publicly recorded

11   document can accurately and readily be determined, and therefore the request for judicial notice

12   of the document (hereinafter "Wells Fargo RfJN Exh. D"), will be granted.

13   e. Exhibit E:  "Notice of Trustee's Sale," dated March 10, 2015, recorded

14   at the Placer County Recorder's office on March 12, 2015, and referring to the $1.3 million Deed

15   of Trust (County Recorder's Office Document No. DOC-2006-0027652), executed by Svetlana

16   Tyshkevich (County Recorder's Office Document No. DOC-2015-0017658-00).  ECF No. 30

17   at 39-40.  The existence and contents of this publicly recorded document can accurately and

18   readily be determined, and therefore the request for judicial notice of the document (hereinafter

19   "Wells Fargo RfJN Exh. E"), will be granted.

20   f. Exhibit F:  Decision in Tyshkevich v. Countrywide Home Loans, Inc.,

21   C070764 (3rd Dist. December 26, 2014) (unpublished).[7]  ECF No. 30 at 42-61.  The existence

22   and contents of this public document can accurately and readily be determined, and therefore the

23   request for judicial notice of the document (hereinafter "Wells Fargo RfJN Exh. F"), will be

24   granted.

25   ////

26

27   _____
     [7]  See Tyshkevich v. Countrywide Home Loans, Inc., 2014 WL 7366943, 2014 Cal. App. Unpub.
     LEXIS 9200 (3rd Dist. 2014), cert. denied, 136 S. Ct. 168 (2015).

28

### 3. BoNY

BoNY has submitted five documents (Exhibits 1-5, ECF No. 34-1), and requests judicial notice of them.  Each document purports to be recorded at the Placer County Recorder's office, and the Request for Judicial Notice asserts that each document bears a specified "instrument number."

However, each document has that instrument number redacted out.  It is that instrument number that permits the court to accurately and readily determine the existence and content of the document.  Therefore, the requests for judicial notice will be denied.

### 4. Plaintiff

#### a. Amicus Brief

Plaintiff requests judicial notice of the Brief of Amicus Curiae Consumer Financial Protection Bureau in Support of Appellant and Reversal, Ho v. Recontrust Company, N.A., No. 10-56884 [2015 WL 4735787] (9th Cir. August 7, 2015).  ECF No. 37 at 3-36.  Plaintiff then cites the brief for the legal argument that defendants are "debt collectors."  ECF No. 36 at 8.

The existence of this publicly filed document can accurately and readily be determined, but the arguments and factual assertions contained in the brief are not judicially noticeable facts.  Because the existence of the brief and the fact that it was filed are not relevant to the issues before the court, the request for judicial notice will be denied.  See Ruiz v. City of Santa Maria, 160 F.3d 543, 548 n.13 (9th Cir. 1998) (judicial notice is inappropriate where the facts to be noticed are not relevant to the disposition of the issues before the court).  However, the court will consider the brief to be a supplement to plaintiff's authorities, to the degree it may be helpful in determining the legal issues before the court.[8]

---

[8]  The court notes that the CFPB's interpretation of who or what is a "debt collector" is of some interest, as that agency is authorized by law to "prescribe rules with respect to the collection of debts by debt collectors."  15 U.S.C.A. § 1692*l*(d).  However, the cited *amicus* brief is not an interpretive regulation, but rather a litigation position, as to which this court may or may not accord any deference, depending on factors that that are not discussed by any party.  See, e.g. United States v. Mead Corp., 533 U.S. 218, 228 (2001) (courts treat interpretations "advanced for the first time in a litigation brief" with "near indifference") (citing Bowen v. Georgetown Univ. Hospital, 488 U.S. 204, 212–213 (1988)); Andersen v. DHL Ret. Pension Plan, 766 F.3d 1205, 1212 (9th Cir. 2014) (declining to accord deference to agency's amicus brief where its position . . . [continued]

10

b. Decision in *Bank of America v. Nash*

Plaintiff requests judicial notice of Bank of America v. Nash, a Florida Circuit Court (Seminole County) decision, dated October 16, 2014. ECF No. 37 at 37-40. That court, after taking testimony, concluded that America's Wholesale Lender ("AWL") "was not in fact incorporated in the year 2005 or subsequently, at any time, by either Countrywide Home Loans, or Bank of America, or any of their related corporate entities or agents." ECF No. 37 at 38.

The court may take judicial notice of court records. Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd per curiam, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981). The existence and contents of the publicly filed Florida court document can accurately and readily be determined, so the fact that the decision was rendered is subject to judicial notice. The underlying conclusion of the Florida court regarding the status of AWL, however, is not a "fact" of which this court can take judicial notice. Because the mere existence of the document is not relevant to the issues before this court, the request for judicial notice will be denied. See Ruiz, 160 F.3d at 548 n.13.

However, the court recognizes that plaintiff is proceeding pro se, and further, that it must interpret plaintiff's Complaint in the light most favorable to her. Accordingly, the court will construe plaintiff's Complaint in light of her reliance on the Florida case, to include the allegation that AWL was not a corporation in 2005, and that AWL was not incorporated thereafter by Countrywide or Bank of America.

III. ANALYSIS

A. The Truth in Lending Act ("TILA") Claim

Plaintiff alleges that she properly "rescinded" her mortgage loans under TILA. Complaint ¶¶ 35, 36. Because plaintiff properly rescinded the loans (according to the complaint), defendants Wells Fargo Bank, N.A. and BoNY were then required to "cancel the note, release the deed of trust, and credit any and all payments, fees, and charges associated with the transaction to

---

does little more than restate the terms of the statute). In any event, no matter what the CFPB's position may be, this court is bound first and foremost by the Ninth Circuit's interpretation of the FDCPA.

1    Plaintiff's account," which they failed to do, in violation of TILA.  Complaint ¶¶ 37-39.

2                1.  Timeliness

3           TILA provides that "in the case of any consumer credit transaction," which includes the

4    home equity loans at issue here, the borrower "shall have the right to rescind the transaction until

5    midnight of the third business day following the consummation of the transaction or the delivery

6    of the information and rescission forms required under this section together with a statement

7    containing the material disclosures required under this subchapter, whichever is later."

8    15 U.S.C. § 1635(a).[9]  What is intended by this is that "the borrower may rescind the loan

9    agreement if the lender fails to deliver certain forms or to disclose important terms accurately."

10   Beach v. Ocwen Fed. Bank, 523 U.S. 410, 411 (1998).

11          However, if the lender is late in delivering the required disclosure forms, the right of

12   rescission persists for up to *three years* past the date the loan is consummated.  15 U.S.C.

13   § 1635(f).  At the end of that three year period, the borrower's right of rescission expires even if

14   the lender never provides the required disclosures.  Beach, 523 U.S. at 413 (TILA provides "that

15   the borrower's right of rescission 'shall expire three years after the date of consummation of the

16   transaction or upon the sale of the property, whichever occurs first,' even if the required

17   disclosures have never been made").

18          Moreover, the three-year period is not a statute of limitations, but a statute of repose.

19   McOmie-Gray v. Bank of Am. Home Loans, 667 F.3d 1325, 1326 (9th Cir. 2012) ("15 U.S.C.

20   § 1635(f) is a three-year statute of repose, requiring dismissal of a claim for rescission brought

21   more than three years after the consummation of the loan secured by the first trust deed").  What

22   this means is that once the three-year clock runs out, the right of rescission is *completely*

23   _____

24   [9]  The parties agree that neither loan at issue here is a "residential mortgage transaction" in which "a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's

25   dwelling *to finance the acquisition or initial construction of such dwelling*."  15 U.S.C.A.

26   § 1602(w) (emphasis added).  These loans – a loan refinancing and a home equity line of credit – are therefore not categorically exempted from TILA's right of rescission.  15 U.S.C.A.

27   § 1635(e)(1) ("[T]his section [conferring the right of rescission] does not apply to . . . a residential mortgage transaction as defined in section 1602(w) of this title").

28

1  *extinguished*, and the court is deprived of jurisdiction to hear a claim based upon the rescission.

2  Beach, 523 U.S. at 412 ("§ 1635(f) completely extinguishes the right of rescission at the end of

3  the 3-year period"); Miguel v. Country Funding Corp., 309 F.3d 1161, 1164 (9th Cir. 2002) (the

4  expiration of the 3-year period "depriv[es] the courts of subject matter jurisdiction when a § 1635

5  claim is brought outside the three-year limitation period"), cert. denied, 539 U.S. 927 (2003).

6  a.  "Consummation" of a loan under TILA

7  In order for the court to determine whether the right of rescission has been extinguished

8  by the 3-year statute of repose, it must know when the statute of repose clock starting ticking.

9  Defendants argue that the clock started on or about March 6, 2006, when the loans were made.  In

10  support, they cite the Deeds of Trust (of which the court has taken judicial notice), both of which

11  are dated March 6, 2006.  See Real Time RfJN Exh. B ($170,000 Deed of Trust), Wells Fargo

12  RfJN Exh. A ($1.36 million Deed of Trust).

13  Plaintiff argues that the 3-year clock did not start to run on March 6, 2006, because the

14  loan was not "consummated" at that time.  In her Complaint, plaintiff alleges that the loans were

15  never "consummated" as defined by "Regulation Z," 12 C.F.R. Part 226.  Specifically, she

16  argues, "the true creditor to the transaction was never disclosed to Plaintiff," Complaint ¶ 35,

17  even though this is required to consummate the loan.  See 12 C.F.R. § 226.2(a)(13).

18  As plaintiff argues, her right to rescind her consumer credit transaction expires "three

19  years after the date of consummation of the transaction."  15 U.S.C. § 1635(f).  In turn,

20  Regulation Z, the federal regulation that implements the TILA, interprets "consummation" to

21  mean "the time that a consumer becomes contractually obligated on a credit transaction."  12

22  C.F.R. § 226.2(a)(13).  State law determines when a borrower becomes contractually obligated

23  under Regulation Z.  Jackson v. Grant, 890 F.2d 118, 120 (9th Cir. 1989) ("[w]hen a consumer

24  "becomes contractually obligated" under Regulation Z "is, in turn, determined by looking to state

25  law") (citing 12 C.F.R. Pt. 226, Supp. 1 (Official Staff Interpretations), Commentary 2(a)(13)).

26  "Under the law of California, as in most jurisdictions, no loan contract is formed if an

27  essential element [of the contract] is missing."  Grimes v. New Century Mortgage Corp., 340 F.3d

28  1007, 1010 (9th Cir. 2003).  One essential element of a contract under California law is "[p]arties

13

1   capable of contracting." Jackson, 890 F.2d at 120. If this, or any other essential element of the

2   contract is reserved for the future agreement of both parties, "there is generally no legal

3   obligation created until such an agreement is entered into." Id. Plaintiff accordingly argues that

4   the other party to her loan – the lender – was never identified, and therefore the loan was never

5   "consummated" under Regulation Z.

6       Plaintiff thus rests her entire case upon her allegation that the "true" lender – and therefore

7   the other party to the loan – was never identified. Interpreting this allegation in the light most

8   favorable to plaintiff, she is alleging either that (a) "America's Wholesale Lender" – the party

9   identified as the lender on the Deeds of Trust – is a fictitious name, or a "dba," for some other

10  entity, and that other entity was never disclosed to plaintiff, or (b) there was no such contracting

11  entity as "America's Wholesale Lender," even though that name was placed on the loan

12  documents.

13                  b. Was there a counter-party to the loans?

14      The face of the Complaint, together with matters subject to judicial notice, show that all

15  the parties to the contract are identified. There are two loans at issue here. The parties identified

16  for both loans are plaintiff and America's Wholesale Lender ("AWL"). Real Time RfJN Exh. B

17  ($170,000 deed of trust), Wells Fargo RfJN Exh. A ($1.3 million deed of trust). As noted,

18  plaintiff argues against this showing by noting that she has alleged that AWL is not the "true"

19  lender.

20                  i. AWL as a fictitious business name

21      Under the first, and most likely interpretation of the Complaint, plaintiff is alleging that

22  "America's Wholesale Lender" is a fictitious name. First, the Complaint alleges that the loan

23  documents do not disclose the "true" lender. Complaint at 6 n.2 ("the pertinent loan documents

24  failed to identify the true parties to the transactions"). Second, at oral argument on the motion,

25  plaintiff interjected that "America's Wholesale Lender" was a "dba." Third, as disclosed in

26  Tyshkevich v. Countrywide Home Loans, Inc., No. C-07064 (3rd Dist. December 26, 2014), of

27  which this court has taken judicial notice, plaintiff previously sued "Countrywide Home Loans,

28  Inc. (Countrywide), dba America's Wholesale Lenders, Inc.," see Wells Fargo RfJN Exh. F,

14

1  indicating that plaintiff is aware that "America's Wholesale Lender [or 'Lenders']" is a fictitious

2  business name for Countrywide Home Loans, Inc.

3       However there is nothing in California law that prohibits an entity from doing business

4  under a fictitious business name, or a "dba."  To the contrary, California law specifically provides

5  for this practice.  See Cal. Bus. & Prof. Code §§ 17900-30 ("Fictitious Business Names").

6  Therefore, if plaintiff's allegation is that the 3-year clock did not start running in March 2006

7  because a fictitious business name was listed as the counter-party to her contract, then her

8  allegation is legally insufficient to stop the clock from running.

9                        ii.  AWL as non-existent entity

10       The other possible interpretation of the Complaint is that plaintiff is alleging that AWL

11  simply did not exist, and that a made-up business name was simply added as the lender, on her

12  loan contract.  In light of plaintiff's implicit acknowledgment in her state lawsuit that AWL *does*

13  exist as the fictitious name of Countrywide, and her acknowledgement at oral argument that AWL

14  was a "dba," the court does not consider this possibility to be a plausible interpretation of the

15  Complaint.

16       At oral argument on this matter, however, plaintiff pressed the possibility that AWL was

17  actually non-existent, rather than simply a fictional name, by asserting that the Deeds of Trust

18  identify AWL as a New York corporation, when in fact, she alleges, it was not a New York

19  corporation.  This argument misreads the Deeds of Trust.  They do not state that "AWL" is a

20  corporation.  Rather, they state that the "Lender" is a corporation organized under the laws of

21  New York.  While the wording could be clearer, this plain meaning of this is that the "Lender" –

22  which plaintiff implicitly acknowledges is *Countrywide* (dba AWL) – is a New York

23  Corporation.  It does not assert that AWL – the fictitious name itself – is a New York

24  Corporation.[10]

25  _____

26  [10]  [As the California Court of Appeal put it: "Thus, in using the fictitious name America's
   Wholesale Lender in the loan documents, Countrywide acted properly and did not create or
   purport to create any new juridical entity. . . . *The fact that the loan documents went further and*

27  *stated that America's Wholesale Lender is a New York Corporation was not inaccurate or*
   *misleading*.  Countrywide, doing business as America's Wholesale Lender, is and was a New

28  . . . [continued]

1

c. Conclusion

2

Defendants Wells Fargo and BoNY, the only defendants against whom the TILA claim is

3

made, move to dismiss the TILA claim because plaintiff's lawsuit is predicated upon her

4

rescissions, in 2015, of two loans that were made in March 2006.  Looking only to the Complaint

5

and to matters subject to judicial notice, it appears that plaintiff's ability to rescind the loans was

6

extinguished in March 2009, six years before plaintiff filed this lawsuit.  Plaintiff's argument that

7

the loans were not "consummated" in March 2009 (or maybe never), is not supported by anything

8

appearing in the Complaint or subject to judicial notice, or plausibly inferable from either.

9

However, the court cannot definitively exclude the possibility that plaintiff could allege in

10

good faith that AWL was not a proper contracting party in March 2006.[11]  Accordingly, the

11

undersigned will recommend that plaintiff be permitted to file a motion to amend her Complaint

12

in an attempt to overcome the statute of repose.[12]

13

2. Failure to tender

14

Wells Fargo and BoNY move to dismiss the TILA claim on the further ground that the

15

Complaint fails to allege that plaintiff has the ability "to tender the amount owed on the loan."

16

Defendants are correct that if plaintiff is able to rescind, she will be required to give back what

17

she received from the lender, namely, the benefit of the $1.36 million and the $170,000 loans.  15

18

U.S.C. § 1635(b) ("Upon the performance of the creditor's obligations under this section, the

19

obligor shall tender the property to the creditor, except that if return of the property in kind would

20

be impracticable or inequitable, the obligor shall tender its reasonable value"); 12 C.F.R.

21

§ 226.23(d)(3) ("If the creditor has delivered any money or property, the consumer may retain

22

23

York corporation and, like a multitude of other businesses, is permitted to operate under its
fictitious name."  Vildosola v. Countrywide Home Loans, Inc., 2015 WL 5258687 at *2, 2015
Cal. App. Unpub. LEXIS 6448 at *5 (Cal. App., 4th Dist.  September 10, 2015) (emphasis added)
(unpublished).]

24

25

[11]  The court notes that at oral argument on this matter, counsel for BoNY invited the court to
check the Secretary of State's website to confirm that AWL was authorized to conduct business in
California in 2006.  Defendants will have an opportunity to request judicial notice of the
appropriate governmental website (or other appropriate document) if plaintiff is permitted to
amend her Complaint.

26

27

[12]  Since the statue of repose is jurisdictional, it is proper to require plaintiff to address the issue in
her complaint.

28

16

possession until the creditor has met its obligation under paragraph (d)(2) of this section.  When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor ").  Because of this, the district court has the discretion to require plaintiff to show that she has the ability to tender the amount of proceeds she received from the loan.  Yamamoto v. Bank of New York, 329 F.3d 1167, 1173 (9th Cir. 2003) (district court has discretion to require plaintiff to show ability to tender before requiring rescission), cert. denied, 540 U.S. 1149 (2004).

However, this is not a pleading issue susceptible of resolution on a Rule 12(b)(6) motion.  Yamamoto gives this court the discretion to require that plaintiff plead her ability to tender back what she received before she finally receives her "decree of rescission."  Id. at 1171.[13]  The Ninth Circuit has rejected the extension of Yamamoto to require that plaintiffs plead ability to tender in their complaint.  Merritt v. Countrywide Fin. Corp., 759 F.3d 1012, 1033 (9th Cir. 2014).  The ability to tender is an issue that may be addressed at the summary judgment stage, but not on a motion to dismiss TILA rescission claims.  Id.

B. FDCPA Claims

> Congress passed the FDCPA in 1977 with the stated purposes of eliminating "abusive debt collection practices," ensuring "that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged," and promoting "consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  In furtherance of these purposes, the FDCPA bans a variety of debt collection practices and allows individuals to sue offending debt collectors.

Schlegel v. Wells Fargo Bank, NA, 720 F.3d 1204, 1207-08 (9th Cir. 2013).

1. Dependence on TILA claims

All of plaintiff's FDCPA claims are predicated upon the alleged rescission of her loans.  Thus, in her fist claim, plaintiff alleges that defendants pursued "collection activity against Plaintiff" after the loans were rescinded under TILA.  Complaint ¶¶ 17-18; see 15 U.S.C. § 1692e(5) (unlawful to make a "threat to take any action that cannot legally be taken").  In the

---

[13]  Citing Ljepava v. M. L. S. C. Properties, Inc., 511 F.2d 935, 944 (9th Cir. 1975), and Palmer v. Wilson, 502 F.2d 860, 862 (9th Cir. 1974) (court has "the equitable power to condition its decree" upon tender of repayment).

1   second claim, plaintiff alleges that defendants falsely represented the legal status of the loans as

2   being due and owing, or in default, because, she alleges, the loans had actually been rescinded.

3   Complaint ¶ 21; see 15 U.S.C. § 1692e(2)(A) (unlawful for debt collector to falsely represent "the

4   character, amount, or legal status of any debt").  In her third claim, plaintiff alleges that

5   defendants threatened to collect on a debt although not authorized by the loan agreements or by

6   law, because the loans (and possibly the security interest) had already been rescinded.  Complaint

7   ¶¶ 24-26; see 15 U.S.C. § 1692f(1) (unlawful to collect any amount on a debt unless "authorized

8   by the agreement creating the debt or permitted by law").

9        The Complaint contains no claim that defendants otherwise violated the FDCPA.  For

10   example, there is no claim that defendants threatened plaintiff with arrest, or employed "unfair or

11   unconscionable means to collect or attempt to collect any debt," independent of the alleged

12   rescission.  See, e.g., 15 U.S.C. §§ 1692e(4) (threatening arrest), 1692f (unconscionable means).

13        Because plaintiff's current complaint (together with matters subject to judicial notice),

14   shows that her TILA claim and right to rescind, upon which all of the FDCPA claims rest, was

15   extinguished years ago, these claims must be dismissed against all defendants, for failure to state

16   a claim.  Since, however, the TILA claim is being dismissed without prejudice, these claims

17   should also be dismissed without prejudice.  If plaintiff prevails on a motion for leave to amend

18   her complaint to cure the TILA timeliness issue, she should be able to re-allege her FDCPA

19   claims.

20            2.  Debt collectors

21        The FDCPA "bans a variety of debt collection practices and allows individuals to sue

22   offending *debt collectors*."  Schlegel, 720 F.3d at 1207-08 (emphasis added).  Plaintiff here has

23   alleged that defendants violated 15 U.S.C. §§ 1692e and 1692f, which prohibit "debt collectors"

24   from making false and misleading representations in collecting debt (1692e), and from using

25   unfair debt collection practices (1692f).  Because these prohibitions apply only to "debt

26   collector[s]" as defined by the FDCPA, the complaint must plead "factual content that allows the

27   court to draw the reasonable inference" that defendants are debt collectors.  Schlegel, 720 F.3d

28   at 1208.

1    BoNY argues that it is not engaged in the collection of any debt, which the court construes

2    to be an argument that it is not a "debt collector."  In addition, Wells Fargo and BoNY both argue

3    that "the only 'collection' action . . . [they] have engaged in is the pursuit of non-judicial

4    foreclosure."  See ECF Nos. 29 at 9 (Wells Fargo), 33 at 10 (BoNY).  The undersigned construe

5    these to be arguments that Wells Fargo and BoNY are not "debt collectors" under the FDCPA.

6        There are three possibilities for Wells Fargo or BoNY to be a debt collector under the

7    FDCPA.  The first type of "debt collector" is an entity whose "principal purpose" is debt

8    collection.  15 U.S.C. § 1692a(6); Schlegel, 720 F.3d at 1208.

9        The second type of "debt collector" is an entity that "regularly collects or attempts to

10   collect, directly or indirectly, debts owed or due or asserted to be owed or due *another*," 15

11   U.S.C. § 1692a(6) (emphasis added), so long as the debt "was not in default at the time it was

12   obtained" by the person collecting the debt, id. § 1692a(6)(F)(iii).  See Jerman v. Carlisle,

13   McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 577 (2010) ("[t]he Act regulates

14   interactions between consumer debtors and 'debt collector[s],' defined to include any person who

15   'regularly collects ... debts owed or due or asserted to be owed or due another.'") (citing 15

16   U.S.C. § 1692a(5), (6)).  The key here is that a debt collector must regularly collect or try to

17   collect the debts *of another*, and therefore excludes entities even if they regularly collect debts

18   owed to themselves.  Schlegel, 720 F.3d at 1209-10 (rejecting argument that "language in the

19   complaint adequately alleges that Wells Fargo collects debts 'owed or due another,'" where the

20   complaint alleged that defendant regularly acquires mortgages that are in default).[14]

21       The third type of "debt collector" is any business, "the principal purpose of which is the

22   enforcement of security interests."  15 U.S.C. § 1692a(6).

23   ////

24   ////

---

25

26   [14]  Moreover, the legislative history of the FDCPA supports the view that it was not intended to cover: (1) the "collection of debts, such as mortgages, . . . by persons who originated such loans" or; (2) "mortgage service companies and others who service outstanding debts of others," so long

27   as "the debts were not in default when taken for servicing."  S. Rep. No. 95-382, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698.

28

Plaintiff's Complaint contains no *factual* allegations from which the court can conclude that Wells Fargo or BoNY is a debt collector, or at least is acting as such in this case.[15]  Here, as in Schlegel, "the complaint's factual matter, viewed in the light most favorable to . . . [plaintiff], establishes only that debt collection is some part of . . . [defendant's] business, which is insufficient to state a claim under the FDCPA."  Id. at 1209.  Because the Complaint contains no factual allegations from which the court could conclude that Wells Fargo or BoNY is a "debt collector" subject to the FDCPA, the FDCPA claims against BoNY should be dismissed without prejudice.

### 3.  Non-judicial foreclosure

Both defendants further argue, independently of their argument that they are not debt collectors, that the FDCPA "is not applicable to non-judicial foreclosures."  The undersigned rejects this argument because, as discussed below, both defendants are alleged to have engaged in conduct other than non-judicial foreclosure, and further, the FDCPA does apply to certain non-judicial foreclosures.

### a.  Defendants' conduct

The Complaint, read in the light most favorable to plaintiff, alleges that all defendants (including Real Time, which does not join Wells Fargo and BoNY in these arguments), engaged in "collection activity against Plaintiff."  Complaint ¶¶ 17, 18, 24, 25.  Specifically, plaintiff alleges that Wells Fargo and BoNY (and other defendants) "continue to falsely represent the legal status" of the loans at issue here.  Complaint ¶ 21.  This conduct – if true, engaged in by a "debt collector," and occurring within the statute of repose – is unlawful under the FDCPA.

### b.  Non-judicial foreclosure as FDCPA-covered conduct

Defendants argue that the FDCPA "is not applicable to non-judicial foreclosures."  In fact, the FDCPA specifically prohibits "unfair or unconscionable means" in connection with non-

---

[15]  The Complaint does allege, as a *legal conclusion*, that each defendant "is a 'debt collector' as that term is defined by 15 U.S.C. § 1692A(6) and/or the Rosenthal Fair Debt Collection Practices Act ('RFDCPA')."  Complaint ¶¶ 2 (Wells Fargo), 6 (BoNY).  As noted above, the court does not accept legal conclusions as true.

judicial foreclosures:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
>
> Taking or threatening to take any *nonjudicial action to effect dispossession or disablement of property* if –
>
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>
> (B) there is no present intention to take possession of the property; or
>
> (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C.A. § 1692f(6) (emphasis added).  Defendants do not explain why this provision, which by its terms plainly applies to non-judicial foreclosures, does not mean what it says.[16]

Nor do defendants explain why the documents threatening foreclosure are not attempts to collect the underlying debt, especially when they state, among other things:

> "you may have the legal right to bring your account in good standing by paying all your past due payments . . . [¶]  This amount is $682,344.39 . . . and will increase until your account becomes current.  . . . [¶]  Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account . . . but you must pay all amounts in default at the time payment is made. . . . [¶] [If you run out of time,] you have only the legal right to stop the sale of your property by paying the

---

[16]  Plaintiffs cite several cases holding that non-judicial foreclosures are not covered by the FDCPA.  See, e.g., Flores v. EMC Mortgage Co., 997 F. Supp. 2d 1088, 1116 (E.D. Cal. 2014) (O'Neill, J.) ("'the activity of foreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA'"); Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1200 (E.D. Cal. 2010) (Wanger, J.) ("[t]he 'law is clear that foreclosing on a deed of trust does not invoke the statutory protections of the RFDCPA'"); Castaneda v. Saxon Mortgage Servs., Inc., 687 F. Supp. 2d 1191, 1197 (E.D. Cal. 2009) (Shubb, J.) ("foreclosure pursuant to a deed of trust does not constitute debt collection under the RFDCPA"); Murphy v. JP Morgan Chase, 2015 WL 2235882 at *3 (E.D. Cal. 2015) (Hollows, M.J.) ("[f]oreclosure on a property based on a deed of trust does not constitute collection of a debt within the meaning of the FDCPA").  The undersigned finds that those statements are consistent with the statement of the law offered here: "nonjudicial foreclosure actions do not constitute 'debt collection,' *unless alleged under § 1692f(6)*." ; see also, Titus v. Wells Fargo Bank, N.A., 2015 WL 9306592 at *2, 2015 U.S. Dist. LEXIS 171016 at *4 (W.D. Wash. 2015) ("nonjudicial foreclosure actions do not constitute 'debt collection,' *unless alleged under § 1692f(6)*") (emphasis added).

1
2

> entire amount demanded by your creditor.   [¶]   To find out the amount you must pay . . . contact . . . Select Portfolio Servicing, Inc. c/o National Default Servicing Corporation.

3   Wells Fargo RfJN Exh. D (ECF No. 30 at 34-35) ("Notice of Default").  Even assuming, without

4   deciding, that the judicial foreclosure itself is not the collection of a debt, it does appear that the

5   Notice of Default is attempting to collect the debt, at least as an alternative to the threatened

6   foreclosure.[17]  See Thomson v. Prof'l Foreclosure Corp. of Washington, 2000 WL 34335866

7   at *6, (E.D. Wash. Sept. 25, 2000) ("the Court holds that a foreclosure on real estate that secures

8   a defaulted note *is inherently a collection of the note debt* and that *notices of the pending*

9   *foreclosure inherently 'induce' or force the debtor to pay the debt*") (emphases added), aff'd

10  mem., 86 F. App'x 352 (9th Cir. 2004).[18]

11                         4.  Failure to state a claim

12          Real Time moves to dismiss for failure to state a claim, separate and apart from the

13  argument that the claim is time-barred.  Defendant argues that plaintiff fails to allege that it

14  violated 15 U.S.C. §§ 1692e, 1692f.  That is not so.  Plaintiff alleges that Real Time (along with

15  all other defendants) misrepresented the status of the loan (because it had been rescinded) and

16  tried to collect a loan it had no right to collect (because it had been rescinded).  If the loan had in

17  fact been rescinded, those would appear to be good FDCPA claims.  Real Time's motion to

18  dismiss on grounds of Fed. R. Civ. P. 8(a) is not meritorious, as plaintiff's claim is clearly stated.

19                              IV.  SUMMARY

20          The complaint should be dismissed because it was filed too long after the loans were

21  issued.  Because the TILA rescission claims were brought long after the latest statutory deadline,

22  both the TILA claims and the FDCPA claims fail.   The current complaint does not contain facts

23  _____

24  [17]  In contrast, the Notice of Trustee's Sale contains no language indicating any attempt to collect the debt, nor any promise that payment of the debt could avoid the sale.  See Wells Fargo RfJN Exh. E (ECF No. 30 at 39-40).

25  [18]  On the other hand, both Notices of Default occur *before* plaintiff is alleged to have rescinded the underlying loans.  See Wells Fargo RfJN Exhs. B (June 16, 2008 Notice of Default), D

26  (October 22, 2014 Notice of Default); Complaint ¶ 10 (rescission on March 14, 2015 & July 2,

27  2015).  If plaintiff us alleging that there is something unlawful about these notices independent of her alleged rescission, she will have the chance to allege it in a proposed amended complaint.

28

1    that support plaintiff's theory that the loans were not consummated because the lender was not

2    identified and/or the entity identified was legally incapable of contracting.  The undersigned is

3    unconvinced that plaintiff will be able to amend her complaint to include facts that would

4    demonstrate the loans were not consummated within the meaning of Regulation Z and California

5    law.  However, the possibility cannot be ruled out at this stage.  It will therefore be recommended

6    that the complaint be dismissed without prejudice, and plaintiff permitted to ***bring a motion for***

7    ***leave*** to file an amended complaint.  Such a motion must be accompanied by a proposed amended

8    complaint.  A proposed amended complaint may attempt to amend any of the claims that are

9    dismissed without prejudice, to correct the various deficiencies explained above.  Whether leave

10   to amend is granted, however, will turn first and foremost on whether the amended complaint

11   states facts that are sufficient to overcome the statute of repose.  If the TILA claims are time-

12   barred, this court has no jurisdiction and will be unable to even consider the other proposed

13   amendments and claims.

V.  CONCLUSION

14

15          For the reasons stated above, IT IS HEREBY ORDERED that

16          1.  Defendant Real Time's Request for Judicial Notice (ECF No. 27-2), is GRANTED as

17   to Real Time RfJN Exh. B (ECF No. 27-5), and is otherwise DENIED;

18          2.  Defendant Wells Fargo's Request for Judicial Notice (ECF No. 30), is GRANTED in

19   its entirety, that is, as to Wells Fargo RfJN Exhs. A-F;

20          3.  BoNY's Request for Judicial Notice (ECF No. 34), is DENIED in its entirety; and

21          4.  Plaintiff's Request for Judicial Notice (ECF No. 37), is DENIED in its entirety.

22          IT IS HEREBY RECOMMENDED that defendants' motions to dismiss (ECF Nos. 27,

23   29, 33), be GRANTED IN PART and DENIED IN PART, as follows:

24          1.  In regard to the motions of defendants Wells Fargo and BoNY, to dismiss the TILA

25   claim for untimeliness:

26                 a.  Such motions should be GRANTED, without prejudice.  The recommendation

27   is being made without prejudice in order to permit plaintiff an opportunity to amend her

28   complaint to cure the timeliness defect, if she can *truthfully* do so.

b. Plaintiff should be granted 30 days to **file a motion** before the undersigned **for leave** to amend her complaint.  The motion to amend the complaint should comply with the court's Local Rules, including Local Rule 137(c) (requiring plaintiff to attach a copy of the proposed amended complaint to the motion).  Plaintiff should also be required to include in her motion – separately from the proposed amended complaint itself – separate paragraphs setting forth the timeliness facts she is adding to the amended complaint.

2.  All defendants' motions to dismiss the FDCPA claims for failure to state a claim predicated upon the alleged TILA rescission, should be GRANTED without prejudice.

3.  BoNY's motion to dismiss the FDCPA claims because it is not a "debt collector," should be GRANTED without prejudice.

4.  Consideration of the state claims should be DEFERRED until the status of plaintiff's federal claims is resolved.  See 28 U.S.C. § 1367(c)(3) (court may decline to exercise supplemental jurisdiction of state claim if all federal claims are dismissed).

5.  All other grounds for dismissing the TILA or FDCPA claims should be overruled.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written Objections with the court and serve a copy on all parties within twenty-one (21) days.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to any Objection shall be filed within fourteen (14) days of service of the Objection.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: January 14, 2016

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE